UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:18-CV-00177-HBB

STEPHANIE PITTMAN                                                                                                        PLAINTIFF

VS.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security                                                                             DEFENDANT

## MEMORANDUM OPINION AND ORDER

### BACKGROUND

Before the Court is the complaint (DN 1) of Plaintiff, Stephanie Pittman, seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). Both the Plaintiff (DN 12) and Defendant (DN 24) have filed a Fact and Law Summary. For the reasons that follow, the undersigned orders that judgment be granted in favor of the Commissioner.

Pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73, the parties have consented to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed (DN 10). By Order entered March 21, 2019 (DN 11), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted. No such request was filed.

## FINDINGS OF FACT

Pittman filed an application for disability insurance benefits and a period of disability on September 18, 2015 (Tr. 176-182). Pittman alleged that she became disabled on October 18, 2014 as a result of bipolar and dissociative identity disorder (Tr. 211). Administrative Law Judge Michael Scurry ("ALJ") conducted a hearing on April 1, 2016 in Evansville, Indiana. Pittman was present and represented by Sara Diaz. Also present and testifying were Tammy Sutton, LCSW, Pittman's therapist, and Robert E. Breslin, MS CRC, an impartial vocational expert.

In a decision dated March 28, 2018 the ALJ evaluated this adult disability claim pursuant to the five-step sequential evaluation process promulgated by the Commissioner (Tr. 18-31). At the first step, the ALJ found Pittman has not engaged in substantial gainful activity since October 18, 2014 through her date last insured, December 31, 2017 (Tr. 18). At the second step, the ALJ determined that Pittman's bipolar disorder, panic disorder, dysphoric disorder, and cannabis abuse are "severe" impairments within the meaning of the regulations (Tr. 18). At the third step, the ALJ concluded that Pittman does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 (Tr. 19).

At the fourth step, the ALJ found Pittman has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can understand, remember, and apply information for unskilled, routine, simple tasks; she can concentrate, persist, and maintain pace for such tasks due to moderate limitations; and she can interact with others occasionally (Tr.21-22). Relying on testimony from the vocational expert, the ALJ found that Pittman is able to perform past relevant work as a sign carrier (Tr. 29).

Therefore, the ALJ concluded that Pittman has not been under a "disability," as defined in the Social Security Act, from October 18, 2014 through the date of last insured (Tr. 31).

Pittman timely filed a request for the Appeals Council to review the ALJ's decision (Tr. 253-259). The Appeals Council denied Pittman's request for review of the ALJ's decision (Tr. 1-7).

CONCLUSIONS OF LAW

Standard of Review

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d at 695 (quoting Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

As previously mentioned, the Appeals Council denied Pittman's request for review of the ALJ's decision (Tr. 1-7). At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); *see* 42 U.S.C. § 405(h) (finality of the Commissioner's decision). Thus, the Court will be reviewing the decision of the ALJ, not

the Appeals Council, and the evidence that was in the administrative record when the ALJ rendered the decision. 42 U.S.C. § 405(g); 20 C.F.R. § 404.981; Cline v. Comm'r of Soc. Sec., 96 F.3d 146, 148 (6th Cir. 1996); Cotton v. Sullivan, 2 F.3d 692, 695-696 (6th Cir. 1993).

The Commissioner's Sequential Evaluation Process

The Social Security Act authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months.

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential evaluation process for evaluating a disability claim. *See* "Evaluation of disability in general," 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows:

1) Is the claimant engaged in substantial gainful activity?

2) Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to do basic work activities?

4

3) Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1?

4) Does the claimant have the residual functional capacity to return to his or her past relevant work?

5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied Plaintiff's claim at the fourth step.

1. Tammy Sutton, LCSW

Pittman's first contention is that the ALJ erroneously failed to give controlling weight to the opinion of her treating therapist, Tammy Sutton, LCSW (DN 12 PageID # 924). Ms. Sutton submitted a Mental Residual Functional Capacity Questionnaire and appeared at Pittman's hearing before the ALJ (DN 9-7 PageID # 833, Tr. 53-58). She opined that Pittman's mental disorders were so severe that it is "impossible for Pittman to work" (DN 9-7 PageID # 833).

In response, the Commissioner argues that the ALJ properly considered Ms. Sutton's opinion. The Commissioner emphasizes that Ms. Sutton is not an acceptable medical source under the regulations and her opinion was inconsistent with other medical evidence in the record (DN PageID # 976-977).

Social Security regulations require Administrative Law Judges to evaluate every medical opinion in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c).[1] The process of assigning weight

---

[1] Effective March 26, 2012, the numbering of the treating physician rules changed. Section 416.927(d)(2) became 416.927(c)(2), and section 404.1527(d)(2) became 404.1527(c)(2).

to medical opinions in the record begins with a determination whether to assign controlling weight to the medical opinion of the treating source. The "treating physician rule" mandates that the ALJ give a treating physician's medical opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. §§ 404.1527(c), 416.927(c); Gayheart v. Comm'r of Soc. Sec., 710 F.3d 365, 375-76 (6th Cir. 2013). If controlling weight is not assigned to the treating source's opinion, the Administrative Law Judge must provide "good reasons" for doing so. The reasons must be supported by the record and sufficiently specific to make clear to reviewers the weight given to a treating source's opinion and the reasons for the assigned weight. Gayheart, 710, F.3d at 376. (citing Soc. Sec. Rul. No. 96-2p, 1996 WL 374188, at 5 (Soc. Sec. Admin. July 2, 1996)). If a treating physician opinion is not granted controlling weight an administrative law judge must then consider the factors in paragraphs (c)(1)-(6)[2] of this section in deciding how much weight to accord each of the medical opinions in the record. 20 C.F.R. §§ 404.1527(c), 416.927(c).

The procedural requirements for assigning weight to the opinion of a treating source and providing "good reasons" for that weight serve both to ensure adequacy of review and to give the plaintiff a better understanding of the disposition of her case. Cole v. Astrue, 661 F.3d 931, 939 (6th Cir. 2011) (citing Rogers v. Comm'r, 486 F.3d 234, 242 (6th Cir. 2007)). "These procedural requirements are 'not simply a formality' and are intended 'to safeguard the plaintiff's procedural

---

2 These factors are: 1) The length of the treatment relationship and frequency of examinations; 2) nature and extent of the treatment relationship; 3) the relevant evidence that the treating physician relies upon; 4) the consistency of the opinion with the record as a whole; 5) specialization of the treating physician.

rights.'" Cole, 661 F.3d at 937. The Sixth Circuit has indicated it will not hesitate to remand when it encounters decisions from Administrative Law Judges that do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted).

Here, the ALJ found that Pittman can perform a full range of work at all exertional levels with some non-exertional limitations (Tr. 21-22). Pittman argues that to reach this conclusion, the ALJ erroneously discounted the opinion of Tammy Sutton, a licensed clinical social worker. Notably, Licensed Clinical Social Workers are not acceptable medical sources whose opinion can be considered for controlling weight. 20 C.F.R. § 404.1502(a). However, an administrative law judge is obligated to review all medical evidence in the record and should review even non-acceptable medical sources considering the factors in 20 C.F.R. 404.1527(c). An administrative law judge has broad discretion to assign these opinions any appropriate weight based on the evidence of record. Noto v. Commr. Of Soc. Sec., 632 Fed. Appx. 243, 248-49 (6th Cir. 2015).

Ms. Sutton opined that Pittman's "anxiety makes it impossible for her to work with others for sustained periods of time without meltdowns" (Tr. 833). The ALJ attached "very little weight" to Ms. Sutton's questionnaire responses and hearing testimony. The ALJ noted that Ms. Sutton is not an acceptable medical source and is not able to diagnose Dissociative Identity Disorder (DID), a fact Sutton admitted several times. The ALJ observed that Sutton treated Pittman as if a diagnosis of DID were a foregone conclusion, yet she never referred Pittman to a psychologist or a psychiatrist for testing (Tr. 27). While underdoing treatment with Ms. Sutton, Pittman visited Drs. Goodwyn and Harmon, neither observed any signs of DID (Tr. 441). Dr. Harmon observed "no signs of any difficulty or distress" (Tr. 465). On August 5, 2015, Dr.

7

Harmon assigned Pittman a GAF score in the range of 70-75—indicating that "if symptoms are present, they are transient and expectable reactions to psychosocial stress" (Tr. 27, 441). Ms. Sutton's records do discuss Pittman's alleged blackouts and memory loss, but those apparently only occur when Pittman has slipped into one of her alternate personalities—a condition in which Sutton is not qualified to assess. Ms. Sutton also did not at all address Pittman's daily use of marijuana in her assessment. Finally, the ALJ noted that Ms. Sutton's opinion that Pittman's anxiety "makes it impossible for her to work" is a determination exclusively reserved for the Commissioner and bears no weight (Tr. 27).

The ALJ has full discretion to weigh medical opinions for "other sources." It may be appropriate to give controlling weight to the an "other source" if the source has "seen the individual more often than the treating source, has provided better supporting evidence and a better explanation for the opinion, and the opinion is more consistent with the evidence as a whole." SSR 06-03p (citing 20 C.F.R. § 416.927). However, the ALJ's analysis makes clear that is not the case here. Ms. Sutton's opinions differ from other evidence in the medical record and she is not qualified to diagnose and treat DID. Review by this Court is limited to determining whether the ALJ's decision is supported by substantial evidence and the correct legal standards were applied. Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992). Substantial evidence may support a conclusion, even if that same evidence could support the opposite conclusion. The ALJ's decision to afford the opinion little weight is supported by substantial evidence and therefore cannot be overturned.

2. State Agency Consulting Physicians

Pittman argues that the ALJ improperly assigned "great weight" to the opinion of state agency consulting psychologists—Drs. Prout and Vandivier. Pittman contends that the psychologists' "cursory review" of Pittman's medical records should have resulted in a lower assignment of weight (DN 12 PageID # 928). The Commissioner argues that the ALJ's decision is supported by substantial evidence and should not be disturbed (DN 24 PageID # 980).

The regulations provide that Administrative Law Judges "must consider" the medical findings of state agency medical or psychological consultants because they "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1). Generally, a non-examining physician's report is entitled to less weight than the reports of other physicians who examined the claimant. Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 1980). When the opinion of a non-examining State agency medical/psychological advisor is consistent with the record, the opinion represents substantial evidence to support the Administrative Law Judge's decision. See Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989); Hale v. Sec'y of Health & Human Servs., 816 F.2d 1078, 1082-83 (6th Cir. 1987) (per curiam).

"The opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources." Id. For this reason the opinions of non-examining state agency psychological advisers can be given weight

9

only to the extent they are supported by the evidence in the record.³ 20 C.F.R. §§ 404.1527(f), 416.927(f); see also Atterbery v. Sec'y of Health & Human Servs., 871 F.2d 567, 570 (6th Cir. 1989) (Opinions of a non-examining State agency psychological adviser that are consistent with the evidence of record represent substantial evidence to support the Administrative Law Judge's findings). The ALJ must explain the rationale for their findings so that a subsequent reviewer or court can understand the decision. SSR 17-2p.

Procedural requirements for assigning weight to medical opinions are 'not simply a formality' and are intended 'to safeguard the claimant's procedural rights.'" Cole, 661 F.3d at 937 (citing Wilson, 378 F.3d at 544). Remand is necessary when decisions from Administrative Law Judges do not comprehensively set forth the reasons for the weight assigned to a treating physician's opinion. Id. at 939 (citations omitted). However, a violation of these procedural requirements can be deemed "harmless error" if one of the following requirements is satisfied:

> (1) a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it; (2) if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion; or (3) where the Commissioner has met the goal of § 1527(d)(2) ... even though she has not complied with the terms of the regulation.

The Court must review the decision to determine whether it implicitly provides sufficient reasons for rejecting the treating source's opinion. Hall v. Comm'r of Soc. Sec., 148 F. App'x

---

3 In making this assessment consideration should be given to such factors as the supportability of the opinion in light of all of the evidence in the record (not just the evidence in the record at the time the opinion was rendered), the consistency of the opinion with the record as a whole (including other medical opinions), and any explanation for the opinion provided by the non-examining State agency psychological consultant. Social Security Ruling 96-6p, 1996 WL 374180, at *2 (July 2, 1996).

456, 464 (6th Cir. 2005). Cole, 661 F.3d at 940. The failure to follow the Agency's procedural rule does not qualify as harmless error where the Court cannot engage in "meaningful review" of the ALJ's decision. Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). Although the Commissioner must provide a statement discussing the evidence and reasons on which the decision is based, 42 U.S.C. § 405(b)(1), the undersigned finds that the ALJ's omission of any discussion of the reasons for assigning great weight of Drs. Prout's and Vandivier's report was harmless error. Heston v. Comm'r of Soc. Sec., 245 F.3d 528, 535-536 (6th Cir. 2001).

Here, the ALJ discussed Dr. Prout's opinion at length and noted Dr. Vandivier reviewed and agreed with Dr. Prout's (Tr. 19, 27). The ALJ noted that Dr. Proust reviewed the record from the Disability Determination Services (DDS) and he found that Pittman had only mild limitations in her activities of daily living; moderate limitations in her ability to maintain social functioning; moderate restrictions in her ability to maintain concentration, persistence, or pace; and no episodes of decompensation of extended duration (Tr. 19, 85). Dr. Vandivier assessed Dr. Prout's opinion and concurred with the findings at the reconsideration stage on March 28, 2016 (Tr. 98). Both also found Pittman was "able to understand and remember routine, simple to detailed tasks" (Tr. 88, 100). She can relate with others "with some degree of social demands" and can adapt to "expected, predictable, routine" tasks (Tr. 88).

Despite the ALJ's careful description of Drs. Prout and Vandivier's opinions, Pittman is correct that the ALJ only "offered one conclusory sentence" explaining his decision to afford them great weight (DN PageID # 928). This is an error, but a harmless one. The ALJ thoroughly reviewed the subjective and objective evidence in the record (Tr. 19-28). He concluded that Pittman's medically determinable impairments could reasonably be expected to cause the alleged

11

symptoms; but found Pittman's statements concerning the intensity, persistence, and limiting effects of theses symptoms are not entirely consistent with objective medical evidence and some subjective evidence in the record (Tr. 28). Throughout his opinion, the ALJ explained how each bit of evidence contributed to this finding.

The majority of objective medical evidence in the record, including Drs. Prout and Vandivier's recommendations do not suggest Pittman is disabled. For example, Amber Wheeler, NP assessed Pittman had bipolar disorder, depressed phase of moderate severity, cannabis abuse, and cocaine dependence in remission. She provided a GAF score of 52—indicating only moderate symptoms (Tr. 310). Later treatment at River Valley Behavioral Health diagnosed Pittman's mood as "euthymic." No abnormal thoughts were reported, and it was recommended that she lower her medication dosage (Tr. 24). David Harmon, DO described Pittman as "very pleasant" with "good insight and judgment" and "no psychosis." He assigned her a GAF score of 70-75, but added it was "highly variable" (Tr. 25, 441). After a second appointment with Dr. Harmon, Pittman was doing "very well" and was in "full remission". He detected "no signs of difficulty or distress" (Tr. 26, 465).

Erik Goodwyn, MD, at the University of Louisville Psychiatry similarly diagnosed Pittman with a "euthymic" mood. She presented as fully oriented. Her thought processes were goal directed with logical thought content. Dr. Goodwyn diagnosed a fully intact short term and long-term memory. Pittman was attentive and focused, and her insight and judgment were good (Tr. 26, 475). Even Ms. Sutton's more severe diagnose, which was legitimately discounted by the ALJ for the reasons described above, does not consistently describe the severe symptoms of which

Pittman complains. Sutton initially ruled out DID as a diagnosis (Tr. 25, 388). After one visit she opined, "it was difficult to determine if any acting [was] involved" (Tr. 28, 560).

It is clear from the record that the ALJ thoroughly reviewed the medical evidence. He engages with each piece of evidence and explains why it doesn't demonstrate the severity of symptoms Pittman alleges—the only outlier being Ms. Sutton's opinion. The undersigned concludes that the ALJ has met the goal of § 1527(d)(2), even if he did not adequately explain his reasons for assigning Drs. Prout and Vandivier great weight, it is clear that he viewed them as consistent with the vast majority of the medical evidence in the record. Therefore, the ALJ's error is harmless and his finding supported by substantial evidence.

3. Pittman's Testimony

Pittman's next argument is that the ALJ erroneously failed to accept her testimony as fully credible and did not give sufficient reasons for doing so (DN 12-1 PageID # 929). The Commissioner disagrees, arguing substantial evidence supports the ALJ's finding that Pittman's testimony was less than fully credible.

An ALJ's findings concerning the credibility of an applicant are afforded "great weight and deference." Walters v. Commissioner of Soc. Sec., 127 F.3d 525 (6th Cir. 2997). An individual's statements of symptoms alone are not enough to establish a physical or mental impairment or disability. However, if an individual alleges impairment-related symptoms, the ALJ must evaluate those symptoms using a two-step process set forth in the regulations. SSR 16-3p. First, the ALJ must consider whether there is an underlying medically determinable physical or mental impairment that could reasonably be expected to produce an individual's symptoms. Then the ALJ evaluates the intensity and persistence of those symptoms to determine the extent to

which the symptoms limit an individual's ability to perform work-related activities for an adult to function independently, appropriately, and effectively. Id.

It is rare that a reviewing court substitute its impressions on the veracity of a witness for those of the trier of fact. Gooch v. Sec'y of Health and Human Servs., 833 F.2d 589, 592 (6th Cir. 1987). The undersigned sees no reason to do so here. The ALJ must assess a claimant's subjective testimony and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence in the individual's record. The above analysis shows that the ALJ thoroughly examined the medical evidence in the record. The majority of which does not indicate that Pittman is disabled. There is certainly no objective medical evidence that diagnoses Pittman with DID. The only medical provider who suggested it was a possibility was Ms. Sutton, who is not qualified to make such a diagnosis. Simply put, there is a dearth of objective medical evidence supporting Pittman's claim that she suffers from a medical determinable impairment that could reasonably be expected to produce the symptoms she alleges.

Reports of Pittman's daily activities also don't indicate the severity of symptoms that she claims. *See* SSR 16-3p (the ALJ may consider evidence of individual's daily activities when assessing credibility). A claimant's ability to perform household and social activities on a daily basis is contrary to a finding of disability. Bogle v. Sullivan, 998 F.2d 342, 348 (6th Cir. 1993). Despite claims of inability to interact with others, Pittman reported making new friends and being involved in church (Tr. 20, 432). Several points in the record indicate that Pittman is social and enjoys attending parties (Tr. 20, 223, 512). Pittman has no difficulties with managing herself. Mr. Pittman reported his wife has no issues with personal care. She feeds, bathes, and clothes their

14

three children, cleans the house, does laundry, works the budget, and pays the bills. She shops for all household items and groceries (Tr. 21, 228). Ms. Wolfe, who lived with Pittman for one year, submitted a third-party report that contradicted several of Pittman's claims (Tr. 218-226). She reported that Pittman spends time with others and likes to socialize (Tr. 223). She goes to parties with friends and attends family functions and has no problem getting along with others (Tr. 223-224). She even accused Pittman of faking unusual behavior to get special treatment or sympathy and is "always looking for a handout" (Tr. 225, 226).

This Court is limited in determining whether the findings set forth by the Commissioner are supported by substantial evidence. 42 U.S.C. § 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied. Landsaw v. Sec'y of Health & Human Servs., 803 F.2d 211, 213 (6th Cir. 1986). The Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Sec'y of Health & Human Servs., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)). The undersigned sees no reason to alter the ALJ's findings concerning Pittman's credibility, especially given the great weight and deference they should be afforded. Both the objective and subjective evidence in the record suggests that Pittman is not disabled, the ALJ fully engaged with this evidence, and determined Pittman's subjective claims were not credible. This decision is supported by substantial evidence.

4. Combined effect of Pittman's Impairments

Pittman next argues that the ALJ committed reversible error by failing to determine that the combined effects of Ms. Pittman's impairments rendered her totally disabled (DN 12-1 PageID

15

# 930). She claims the ALJ only recognized Pittman's bipolar disorder, panic disorder, and dysphoric disorder and failed to recognize PTSD, DID, and depression. She argues that this oversight renders the ALJ's decision unsupported by substantial evidence. The Commissioner responds in opposition, arguing that the ALJ fully considered the medical evidence and the combined effects of all Pittman's impairments. The Commissioner contends the ALJ's decision is supported by substantial evidence and not subject to remand or reversal (DN 24 PageID # 986).

Pittman's argument is without merit. Notably, she does not cite any medical evidence that shows that the combination of her impairments renders her disabled. She instead blames the ALJ for not ordering a psychologist or psychiatrist to assess if Pittman has DID, despite it being her burden to fully develop the medical record. As has been stated, there is no evidence in the record, other than her own subjective assertions, that Pittman has DID. Ms. Sutton was not qualified to make such a diagnosis and did not refer Pittman to a psychologist or psychiatrist (Tr. 27, 65).

Discussing multiple impairments individually does not mean the Administrative Law Judge failed to consider the combined effect of those impairments where the Administrative Law Judge specifically referred to a "combination of impairments" in finding the claimant does not meet the listings. Loy v. Sec'y of Health & Human Servs., 901 F.2d 1306, 1310 (6th Cir. 1990) (citing Gooch v. Sec'y of Health & Human Servs., 833 F.2d 589, 592 (6th Cir. 1987)). Here, the ALJ discussed Plaintiff's multiple impairments individually but, at the third step, he also specifically referred to a "combination of impairments" in finding Plaintiff does not meet the listings (Tr. 19-22).

5. ALJ Speculation and Bias

Pittman claims the ALJ "clearly appeared to have bias against Ms. Pittman throughout the decision" (DN PageID # 932). She alleges the ALJ accused Ms. Pittman of faking DID and traumas in her past. She argues that the ALJ speculated that Pittman does not have DID rather than objectively analyzing the medical evidence. Pittman's argument is without merit.

"[A]n ALJ must not substitute his own judgment for a physician's opinion without relying on other medical evidence or authority in the record." Rohan v. Chater, 98 F.3d 966, 968 (7th Cir. 1996). ALJs must not succumb to the temptation to play doctor and make their own independent medical findings. Lennon v. Apfel, 191 F.Supp.2d 968, 977 (W.D. Tenn. 2001). That did not occur here. The ALJ did not play doctor and unilaterally determine Pittman does not have DID. There is in fact no legitimate diagnosis of DID in the medical record, which Pittman has the burden to produce. Similarly, the ALJ does not accuse Pittman of lying, but simply points out evidence in the record that suggests she might be. Ms. Wolfe accused Pittman of faking unusual behavior to get special treatment or sympathy and of "always looking for a handout" (Tr. 225, 226). Even Ms. Sutton considered the possibility of Pittman faking noting "it was difficult to determine if any acting [was] involved" (Tr. 28, 560) and if "[Pittman] is faking the DID she has definitely done her homework on how to present" (Tr. 28, 396). Pittman's accusations of bias are unfounded.

6. Step Four and Five

Pittman's final argument is that there is not substantial evidence supporting the ALJ's finding that jobs existed in the regional or national economy consistent with the adopted residual functional capacity (DN 12-2 PageID # 933). The Commissioner argues that Pittman's argument must fail. An impartial vocational expert testified Pittman could perform past relevant work as a

17

sign carrier at Step Four, therefore the decision is supported by substantial evidence (DN 24 PageID # 988).

At the fourth step in the sequential evaluation process, the Administrative Law Judge makes findings regarding the weight assigned to medical source statements in the record[4], the claimant's credibility[5], the claimant's residual functional capacity[6], the physical and mental demands of the claimant's past relevant work, and the claimant's ability to return to the past relevant work. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e). In regard to the last finding, the relevant inquiry is whether the claimant can return to his past type of work rather than just her past job. Studaway v. Sec'y of Health & Human Servs., 815 F.2d 1074, 1076 (6th Cir. 1987).

It is the claimant's burden at step four of the sequential evaluation process to show an inability to return to any past relevant work, Allen v. Califano, 613 F.2d 139, 145 (6th Cir. 19800), or to prove that a past job should not be considered relevant. Smith v. Sec'y of Health & Human Servs., 893 F.2d 106, 109-10 (6th Cir. 1989). By showing a medical basis for an impairment that

---

4 20 C.F.R. §§ 404.1527(c), 416.927(c).

5 In assessing a claimant's residual functional capacity the Administrative Law Judge must necessarily consider the subjective allegations of the claimant and make findings. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling 16-3p.

6 The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a), 416.946.

prevents her from engaging in his particular occupation, the claimant establishes a *prima facie* case of disability. Boren v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).

To support a finding that a claimant can perform past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of her past job as actually performed, or as ordinarily required by employers throughout the national economy. See Studaway, 815 F.2d at 1076; *see also* 20 C.F.R. §§ 404.1565, 416.965; Social Security Ruling 82-61. Pursuant to Social Security Ruling 82-61, a claimant may be found "not disabled" if she retains the residual functional capacity to perform the actual functional demands and duties of a particular past relevant job and considering the medical records regarding plaintiff, the vocational expert opined that plaintiff could perform her past relevant work. Here, the ALJ found that Pittman could perform past relevant work as a sign carrier. That finding was based on the testimony of an impartial vocational expert. Therefore, it is supported by substantial evidence and cannot be overturned by this Court.

Pittman presents additional argument concerning Step Five in the sequential evaluation process. She contends that testimony provided by the vocational expert cannot be relied upon because it was based on outdated job descriptions in the Dictionary of Occupational Titles. The undersigned declines to review this argument, because it is effectively moot. The ALJ found that Pittman was not disabled because she can perform past relevant work. That decision was supported by substantial evidence. Therefore, Pittman is not disabled under Social Security regulations. However, the ALJ did include "alternative findings for step five of the sequential evaluation process." Pittman takes issue with these findings, but even if this Court agreed with her, it could not grant relief because the ALJ found Pittman not disabled at Step Four.

## **ORDER**

**IT IS HEREBY ORDERED** that the final decision of the Commissioner is **AFFIRMED**.

**IT IS FURTHER ORDERED** that judgement is **GRANTED** for the Commissioner.

Copies:    Counsel